Estate of James T. Moore, Sr., Selma G. Moore, Executrix v. Commissioner. Selma Gessler Moore v. Commissioner.
Estate of Moore v. Commissioner
Docket Nos. 85773, 85774.
United States Tax Court
T.C. Memo 1961-257; 1961 Tax Ct. Memo LEXIS 92; 20 T.C.M. (CCH) 1346; T.C.M. (RIA) 61257; September 11, 1961
Julian N. Stern, Esq., 14 Montgomery St., San Francisco, Calif., for the petitioners. John O. Hargrove, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion In these consolidated cases respondent determined deficiencies in petitioners' income tax and an addition to tax for the taxable year 1956 as follows: Addition to Tax
I.R.C. 1954
Dkt. No.
Petitioner
Deficiency
Sec. 6654
85773
Est. of James T. Moore, Sr., Selma G. Moore, Executrix
$ 851.68
85774
Selma Gessler Moore
2,480.01
$182.11
*93 A dispositive issue is whether the redemption by Quaker Pacific Rubber Company of 897 shares of its common stock owned by petitioners as community property took place during the taxable year 1956. If that question is answered in the affirmative, the following questions must be considered: (1) Whether this redemption was essentially equivalent to a dividend; (2) whether Quaker Pacific Rubber Company had earnings and profits of the taxable year in which redemption took place; and (3) whether Section 303 of the 1954 Code is applicable to the redemption of the estate's stock interest. Petitioner Selma Gessler Moore has not contested the addition to tax under Section 6654 for failure to pay estimated income tax. Findings of Fact The stipulation of facts is incorporated herein by this reference. Petitioner in Docket No. 85773 is the Estate of James T. Moore, Sr. James T. Moore, Sr. died on October 28, 1953. He was the husband of Selma Gessler Moore, petitioner in Docket No. 85774, who was the executrix of decedent's last will and testament. No income tax return was filed on behalf of the petitioner-estate for the calendar year 1956. Selma Gessler Moore filed her individual income *94 tax return for the calendar year 1956 with the district director of internal revenue at San Francisco, California, on the cash basis of accounting. Quaker Pacific Rubber Company, hereinafter referred to as the Company, was organized on January 2, 1948. All of the original stock, comprising 2,000 shares of common stock, was originally owned by the decedent and decedent's wife as community property originating after July 29, 1927. At the decedent's death on October 28, 1953, the Company's stock was owned as follows: James T. Moore, Sr., and Selma G.
Moore, as community property
1,500 shares
Selma, G. Moore, decedent's wife
150 shares
James T. Moore, Jr., decedent's son
135 shares
John Max Moore, decedent's son
80 shares
Total shares outstanding
1,865 shares
Decedent was president of the Company from its organization until his death. During this same period John Max Moore, decedent's son, was executive vice-president, James T. Moore, Jr., decedent's son, was vice-president, secretary, and treasurer, and decedent's wife was vice-president. The Federal estate tax return filed on January 27, 1955, on behalf of decedent's estate indicated that decedent's total *95 estate had a gross value of $199,367.54. All of this estate was community property in which decedent's wife had a vested one-half interest at decedent's death. The estate consisted primarily of the 1,500 shares of the Company's stock, appraised and valued at $138,197.25 or $92.13 per share. The remainder of the estate consisted of $31,414.60 of life insurance payable to decedent's wife, $25,262.71 of life insurance and securities pledged as collateral against a $35,000 bank loan, and $4,794.97 in other assets. The debts of the decedent amounted to $118,436.86. Funeral and administration expenses in the amount of $3,928.11 were claimed on the estate tax return. Decedent's entire estate, except for legacies of $5,000 each to his two sons, was bequeathed to his wife. On December 31, 1948, decedent borrowed $12,500 from the Company on his non-interest bearing, demand promissory note. On July 28, 1949, the decedent borrowed an additional $16,000 from the Company on his non-interest bearing, demand promissory note. No payments were ever made on either of these notes prior to the decedent's death, and their collection was barred by the applicable statute of limitations prior to the tax *96 year here in issue. On the date of his death, decedent was additionally indebted to the Company on an open account in the amount of $83,331.86. On May 28, 1954, the Company filed a claim in the probate proceedings for $82,686.41, being the balance in said open account less $645.45. On February 1, 1955, the decedent's estate petitioned the probate court for an order authorizing it to compromise the Company's claim by the transfer to the Company of 897 shares of the Company's stock together with $45.80 in cash on the ground that there was not cash or readily marketable securities in the estate with which to pay the Company's claim. The probate court issued its order authorizing the compromise on February 14, 1955. On May 31, 1956, at a special meeting the Company's board of directors unanimously adopted a resolution that the claim be compromised. This resolution read as follows: WHEREAS, the Estate of James T. Moore, deceased, is indebted to this corporation in the amount of $82,686.41 for advances made to the decedent during his lifetime and a claim for which has heretofore been submitted by this corporation to the Estate of James T. Moore and has been allowed, approved, and *97 filed; and WHEREAS, this corporation is advised that there are negligible assets in the Estate of James T. Moore which are convertible into cash and from and out of which the claim of this corporation might be satisfied, and it is therefore necessary if the claim of this corporation is to be satisfied that the same be compromised by the acquisition by this corporation from the Estate of stock of this corporation owned by the Estate; and WHEREAS, the capital stock owned by the Estate of the said decedent in this corporation has been appraised for State of California tax purposes in the Estate at $92.13 per share; and WHEREAS, requisite Court authority to compromise and settle the claim of this corporation has been obtained in the probate proceedings of the said decedent's Estate by an order duly made and entered, NOW, THEREFORE, BE IT RESOLVED that the claim of this corporation in the amount of $82,686.41 against the Estate of James T. Moore, deceased, be compromised by the acquisition by this corporation from the said Estate of 897 shares of its capital stock plus the payment of $45.80 in cash, $82,640.61 of the claim being satisfied by the purchase of said 897 shares and the *98 balance of said claim being satisfied in cash in the amount aforesaid. FURTHER RESOLVED, that the acquisition of said 897 shares of this corporation's capital stock from the Estate of James T. Moore, deceased, be and the same is hereby authorized pursuant to and in the manner contemplated by Sections 1706 and 1710 of the Corporations Code of the State of California. FURTHER RESOLVED that the stated capital of the corporation upon acquisition of said 897 shares be reduced by the stated capital attributable to such shares of $89,710.00 and that the difference between said amount and the purchase price of said shares of $82,640.61, or $7,069.39, be credited to capital surplus. FURTHER RESOLVED that the Directors of this corporation hereby determine that the corporation will not be unable by reason of the aforesaid purchase of its shares to satisfy its debts and liabilities when they fall due. On May 31, 1956, the Company was indebted to the decedent's wife in the amount of $42,128.34, of which $12,128.34 was owed on open account and $30,000 was owed on notes payable. At the special meeting of the Company's board of directors held on May 31, 1956, a resolution was unanimously adopted *99 authorizing the contributions of this indebtedness by the decedent's wife to the capital surplus of the Company. An audit of the Company's books was commenced in June, 1956, by the accounting firm of Lybrand, Ross Bros. & Montgomery. The field work in this audit was completed in August, 1956, but the preparation of the audit report was delayed while the accountants conducting the audit attempted to get additional information about the settlement of the decedent's indebtednesses to the Company and the contribution of the Company's indebtedness to decedent's wife to the surplus of the Company. The final audit report was delivered to the Company on January 28, 1957. It contained certain closing entries to be placed on the books as of May 31, 1956. Included in such entries was the following: (Debit)
Capital Stock
$89,700.00
Miscellaneous income
45.80
(Credit)
Receivable from J. T. Moore, Sr.
$82,686.41
Contributed surplus
7,059.39
To record compromise settlement of Estate J. T. Moore, Sr. surrendered 897 shares to the Company plus $45.80 cash. Another entry recorded that decedent's wife had forgiven the Company's debt of $42,128.34 and contributed *100 said amount to the capital surplus of the Company. These entries were accordingly placed on the Company's books as of May 31, 1956. The decedent's estate did not actually endorse and transfer the stock certificate for 897 shares of the Company's stock to the Company until January 14, 1957. On that date, certificate No. 7, representing the 1,500 shares standing in the name of the decedent, was endorsed and cancelled and in its place certificate No. 11 for 897 shares in the Company's name and certificate No. 12 for 603 shares in the name of decedent's estate (representing the balance of the 1,500 shares) were issued. Subsequently, certificate No. 11 representing the 897 shares redeemed by the Company from the decedent's estate was cancelled. Before and after the redemption of the stock from the estate, the Company's stock was owned as follows: Before
After
Estate of James T. Moore, Sr.
and Selma G. Moore, as com-
munity property
1,500
603
Selma G. Moore, decedent's wife
150
150
James T. Moore, Jr., decedent's
son
135
135
John Max Moore, decedent's son
80
80
Total shares outstanding
1,865
968
The reduction of the Company's capital stock brought *101 about by the redemption and cancellation of petitioners' 897 shares did not result in a contraction of the corporation's business. In its Federal income tax return for the fiscal year ended May 31, 1956, the Company reported a net operating loss of $63,300.39. Included in the computation of this loss were: (a) the write-off of the decedent's notes for $12,500 and $16,000; (b) the write-off of the balance of $645.45 in the decedent's open account; and (c) the correction of an overstatement of inventory amounting to $45,113.62 which was discovered by the audit of the Company's books as of May 31, 1956. These adjustments were all properly applicable to prior years and not deductible by the Company for the fiscal year ended May 31, 1956. Consequently, the Company had a profit balance of $10,958.68 rather than a net operating loss for the fiscal year. Respondent has allowed the Company an additional deduction for contributions of $98. The Company paid no cash dividends from the date of its organization on January 2, 1948, through the period ending May 31, 1957. Respondent determined that the redemption by the Company of 897 shares of common stock owned by the petitioners as community *102 property was essentially equivalent to the distribution of a dividend in 1956. He determined that the total dividend thus received was $10,860.68 or $5,430.34 to each petitioner. The redemption by the Company of 897 shares of common stock owned by the petitioners as community property took place on January 14, 1957. Opinion RAUM, Judge: We are faced at the outset with the question of when the redemption here in issue in fact took place. The deficiency notices sent to the petitioners are for the taxable year 1956 and are based on the respondent's determination that the redemption occurred on May 31, 1956. Petitioners, however, contend that the redemption did not take place until January 14, 1957, when the petitioners' stock certificate was endorsed to the corporation, accepted, and a new certificate for 897 fewer shares issued in its place. Since only the taxable year 1956 is presently before us, our ultimate finding of fact in petitioners' favor on this issue is automatically dispositive of these cases without reaching the other litigated questions. We are satisfied on the evidence of record that the redemption herein did not occur until January 14, 1957, at which time the *103 petitioners' shares were actually transferred to the Company and accepted for redemption. Prior to that date, the estate's participation in the redemption was approved by the probate court on February 14, 1955, and the corporation's participation was authorized by its board of directors on May 31, 1956. Neither of these unilateral, preparatory actions by the parties to the redemption, however, constituted the redemption. Not until petitioners' 897 shares were actually tendered to the corporation and accepted by the corporation - events which the record indicates occurred on January 14, 1957 - did the redemption take place. It was on that day and not before that the corporation acquired its stock from petitioners as described in the definition of a stock redemption in Section 317(b) of the 1954 Code. [1] As a result, we have found as a fact that it was on that day that petitioners' 897 shares of stock were redeemed by the corporation. *104 Respondent's selection of May 31, 1956, as the date of the redemption cannot be justified on the present record. That date has no greater claim than February 14, 1955, the date the probate court approved the estate's participation. In fact, since petitioners controlled the corporation and could obtain the necessary approval of the board of directors practically at will, it is arguable that the date of the court's action is of greater significance. Respondent's position is based on the stock entries of the corporation. However, it is clear from the record that the entries in question were in fact placed on the books of the corporation at a subsequent time, "as of" May 31, 1956, at the suggestion of the independent auditors. The redemption itself actually took place in 1957. Since we have determined that the redemption took place during the taxable year 1957, the deficiencies determined herein by the respondent for the taxable year 1956 cannot stand. We, therefore, do not reach the question whether the redemption was essentially equivalent to a dividend or any of the other litigated issues. Decisions will be entered for the petitioners in both cases, except for the $182.11 uncontested *105 addition to tax in Docket No. 85774. Footnotes
1. SEC. 317. OTHER DEFINITIONS. * * *
(b) Redemption Of Stock. - For purposes of this part, stock shall be treated as redeemed by a corporation if the corporation acquires its stock from a shareholder in exchange for property, whether or not the stock so acquired is cancelled, retired, or held as treasury stock.↩